**In re ALAN WOOD STEEL COMPANY, Debtor.**

**SHARON STEEL CORPORATION, Plaintiff,**

v.

**FOURTEES COMPANY, Defendant.**

**Bankruptcy No. 77–930EG.**

United States Bankruptcy Court, E. D. Pennsylvania.

April 2, 1982.

Donald M. Collins, Stradley, Ronan, Stevens & Young, Philadelphia, Pa., for plaintiff, Sharon Steel Corp.

Pace Reich, Joseph S. U. Bodoff, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for defendant, Fourtees Co.

Nathan Lavine, Adelman & Lavine, Philadelphia, Pa., for receiver, Edward J. Dwyer.

John S. Estey, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for debtor.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is who is entitled to a seven-story steel structure: the purchaser of that structure, though the time for its removal under the agreement of sale has expired, or the owner of the realty on which the structure is situated. We conclude that, although the time for removal has elapsed, the purchaser of the structure should be permitted to remove it but must pay the landowner damages for the deprivation of the use of the land during the time that the structure remained there.

The facts of this case are as follows: [1] On June 10, 1977, the Alan Wood Steel Company ("the debtor") filed a petition for an arrangement under chapter XI of the Bankruptcy Act ("the Act").[2] As part of those proceedings, the debtor conveyed certain real property located in Plymouth Township, Montgomery County, Pennsylvania ("the premises") to the Montgomery County Industrial Development Authority ("the Authority"). The Authority thereafter entered into a long term agreement of sale with the Fourtees Company ("Fourtees") for the sale of the premises.

About the same time, the debtor also sold certain personal property, which was located on the above premises, to another party, the Sharon Steel Corporation ("Sharon").[3] Our Order approving the sale of the personalty provided that Sharon must remove the property from the premises before September 13, 1981. The deed which conveyed the premises from the debtor to the Authority also contained an easement granting Sharon the right to come onto the realty for the purpose of removing the personal property before September 13, 1981. We retained jurisdiction over this matter in the event that any controversy arose over Sharon's right to remove the personalty from the premises sold to the Authority.[4]

By October, 1980, Sharon had removed part of the personalty from the premises but there remained the seven-story steel structure in which most of that personalty had been contained. At that time Sharon began negotiations with Fourtees about the possibility of an extension of the September 13, 1981, deadline in order to allow Sharon more time to sell the structure in a way that would maximize its profits. In addition Sharon filed a complaint against Four-

tees in this court in June, 1981, seeking a declaratory judgment that it had the right to remove the structure even after the deadline while acknowledging that it would be liable to Fourtees for damages for the time the structure remained on the premises beyond the deadline. In answer to that complaint, Fourtees asserted that if the steel structure remained on its property beyond the September 13, 1981, deadline then Sharon would lose the right to remove that structure and would, consequently, forfeit all rights in that structure. Fourtees also asserted that, in such an event, Sharon would be liable to it for damages, including the cost to Fourtees of removing that structure, the fair rental value of the realty for the time the structure remained there beyond the deadline as well as punitive damages for Sharon's allegedly willful disregard of Fourtees' rights by leaving the structure on the premises beyond the deadline.

The parties agreed that the court should address first the threshold issue of who has the right to remove the structure, leaving the determination of the amount of damages due Fourtees for a further trial. The parties also agreed to the following: (1) the structure in dispute does have some positive value, if not as a standing structure, at least as scrap metal and (2) the structure must be removed from Fourtees' land as soon as possible.

Given those facts, we see no reason why Sharon should not be permitted to remove the structure. Even if, as Fourtees asserts, Sharon lost its right to remove the structure by failing to do so before the deadline, someone is going to have to remove it now. By allowing Sharon to do it, we would be sparing Fourtees the expense of having it

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. While the Bankruptcy Act has been superseded by the Bankruptcy Code as of October 1, 1979, the provisions of the Act still govern petitions filed before that date. The Bankruptcy Reform Act of 1978, Pub.L.No.95–598, § 403, 92 Stat. 2683 (1978).

3. The personality which Sharon purchased included the basic exygen furnace and the seven-story structure which housed it and is the subject of the instant controversy.

4. *See* our order of October 30, 1978, approving the sale of the personal property to Sharon.

done, thereby mitigating the damages caused by Sharon. Furthermore, we do not believe that Sharon's actions were such as to cause it to forfeit all of its rights in the structure in question. Sharon paid a considerable price for the structure and the other personalty which it bought.[5] To hold that Sharon lost all interest in the structure because it failed to remove that structure before the deadline would be an excessive forfeiture penalty, which is unwarranted given the facts of this case. Sharon did not simply ignore Fourtees' rights by leaving the structure on its property. Rather, Sharon requested an extension of time well in advance of the deadline and negotiated to that end up until the time of the trial herein. Such actions do not, we believe, necessitate a finding that Sharon has forfeited all its rights to the structure. Furthermore, if we were to find such a forfeiture, the result would be a windfall to Fourtees amounting to the value of the structure. We find that such a windfall would be inequitable, if not unconscionable, in these circumstances.

Consequently, we conclude that Sharon should be permitted to remove the structure within a reasonable time.[6] The question of the amount of damages to be awarded Fourtees will be decided at a trial to be held after the structure has been removed.

---

5. The total price paid for those assets was $2,300,000. *See* our order of October 30, 1978, approving that sale.

6. On the question of what is a reasonable time, the parties are apparently in agreement that

such a time would be anywhere from four to six months depending on the weather. We agree that that appears to be a reasonable time given the size of the structure.